UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 MAY 10  PM 12: 27

CLERK

BY _____
DEPUTY CLERK

TARA ELISE SLOCUM,                    )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )   Case No. 5:10-cv-68
                                      )
MICHAEL J. ASTRUE, COMMISSIONER,      )
SOCIAL SECURITY ADMINISTRATION,       )
                                      )
          Defendant.                  )

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE
AND DENYING DEFENDANT'S MOTION TO AFFIRM**
(Docs. 13, 18)

Plaintiff Tara Slocum is a claimant for Social Security Disability Insurance benefits (SSDI) and Supplemental Security Income (SSI). She brings this action against the Social Security Commissioner pursuant to 42 U.S.C. § 405(g) to reverse the Commissioner's decision that she is not disabled, and to remand for a calculation of benefits, or, in the alternative, a new administrative hearing. Plaintiff filed her motion to reverse the Commissioner (Doc. 13) on October 1, 2010, and the Commissioner filed a motion to affirm (Doc. 18) on January 4, 2011. Plaintiff is represented by Judith Brownlow, Esq., and the Commissioner is represented by AUSA Nikolas P. Kerest.

For the reasons set forth below, Plaintiff's motion is GRANTED, and the Commissioner's motion is DENIED.

I.     **Background.**

Plaintiff is a thirty-year-old female with a long history of substance abuse and mental illness. Between the ages of seventeen and twenty-seven, Plaintiff used opiates, marijuana, cocaine, and heroin with some periods of sobriety, the longest of which lasted two years. Her medical records also reveal that she has been diagnosed with, among

other things, mood disorder, borderline personality disorder, and attention deficit
hyperactivity disorder (ADHD).

Plaintiff sought treatment from a variety of sources in her attempts to abstain from
using drugs and to treat her psychological disorders. She received in-patient care at
Valley Vista in July 2005, Maple Leaf Farm in February 2007, and Brattleboro Retreat
from August 8, 2007 to August 28, 2007, and again from May 18, 2008 to May 27, 2008.
Her admission to Brattleboro Retreat in May 2008 followed a suicide attempt via drug
overdose. Plaintiff's out-patient care included treatment and counseling at Health Care
and Rehabilitation Services of Southeastern Vermont ("HCRS") for various periods
between February 20, 2007 and August 6, 2008. She was also treated by psychiatrist
Douglas Southworth, M.D., physician Beach Conger, M.D. (who was her primary care
physician), and Clifton Lord, M.D. of Connecticut Valley Rehabilitation Services, who
primarily treated her opiate addiction.

With the exception of one relapse in March 2009, for which she sought immediate
medical attention from Dr. Lord, Plaintiff has successfully abstained from substance
abuse since her discharge from Brattleboro Retreat in May 2008.

Plaintiff obtained a Licensed Nurse Assistant certificate in 2000 or 2001, and her
GED in 2005 or 2006. She has two young children who are approximately two and seven
years old. In February 2009, Plaintiff transferred custody of both children to her parents
because she felt she could not adequately care for them.

## II.     Procedural History.

Plaintiff applied for disability benefits with the Social Security Administration on
August 21, 2007 alleging a disability onset date of November 1, 2006. Her application
was initially denied because the Federal Reviewing Official found that Plaintiff retained
the ability to perform her previous work as a clothes folder if she abstained from
substance abuse. Plaintiff timely requested a hearing before an Administrative Law
Judge ("ALJ"). ALJ Edward Hoban held a hearing on April 2, 2009 at which Plaintiff
and a vocational expert provided testimony. The ALJ convened a supplemental hearing
on August 18, 2009 to hear testimony from an impartial medical expert. Plaintiff testified

2

at the supplemental hearing as well. The ALJ denied Plaintiff's application in a written decision dated September 30, 2009. This decision became the final decision of the Commissioner on January 28, 2010. Having exhausted her administrative remedies, Plaintiff's claim is now ripe for judicial review under 42 U.S.C. §§ 405(g) and 1383(c).

## III.    Standard of Review.

In reviewing the Commissioner's decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g). It is the Commissioner that resolves evidentiary conflicts and determines credibility issues, and the court may not substitute its own judgment for the Commissioner's. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Aponte v. Sec'y of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). However, if the "evidence has not been properly evaluated because of an erroneous view of the law . . . the determination of the [Commissioner] will not be upheld." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

## IV.    The ALJ's Application of the Five-Step Sequential Evaluation Process.

In order to receive benefits, a claimant must be "disabled" on or before his or her "date last insured" under the Social Security Act. 42 U.S.C. § 423(a)(1)(A). To determine whether a claimant is "disabled," the regulations require application of a five step sequential evaluation process.[1] *Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir.

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

2004); 20 C.F.R. §§ 404.1520, 416.920. The answer to the inquiry at each step determines whether the next step's question must be answered. Step one asks whether the claimant has engaged in substantial gainful activity since the alleged onset date of disability. If not, then step two asks whether the claimant has any "impairments" that are "severe." If one or more "severe impairments" are found, step three asks whether any of these impairments meet or equal one of the listed impairments found in Appendix I of 20 C.F.R. § 404.1599. If an impairment meets or equals a listed impairment then the claimant is deemed "disabled." If not, step four asks whether the claimant retains the Residual Functional Capacity ("RFC") to do his or her past relevant work. Finally, if the claimant is unable to do prior relevant work, step five asks whether the claimant is able to do any job available in significant numbers in the national economy. *Id*. Through the first four steps, the claimant bears the burden of proving disability. At step five, that burden shifts to the Commissioner to show that there is other work in the national economy that the claimant can perform. *See Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981).

When a claimant with ongoing substance abuse is determined to be disabled, adjudicators must also determine whether the claimant has disabling limitations independent of drug use. In other words, "[i]f alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled," then the "individual shall not be considered to be disabled." 42 U.S.C. § 423(d)(2)(C); *see also* 20 C.F.R. § 404.1535(a). The "key factor" in this determination is "whether [the Commissioner] would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b). Thus, the Commissioner evaluates which, if any, of the claimant's functional limitations would remain in the absence of substance abuse, and whether any or all of the remaining limitations would be disabling. *Id*.

---

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

4

In this case, the ALJ followed the sequential evaluation through all five steps. At step two, he found that Plaintiff had the severe impairments of substance abuse/opiate dependence, mood disorder, and personality disorder. He, however, did not find that ADHD and bipolar disorder are among Plaintiff's medically determinable impairments, severe or otherwise. At step three, the ALJ found that, for the period of November 1, 2006 through May 2008, Plaintiff's impairments met Listings 12.04 (Affective Disorders), 12.08 (Personality Disorders), and 12.09 (Substance Addiction Disorders). *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. However, he also found that her impairments would not have met or equaled any Listing if she had abstained from drug use. Likewise, he found that Plaintiff's impairments—though continuing to be "severe"—did not meet a Listing during her period of drug abstinence after May 2008. Accordingly, Plaintiff was not found "disabled" at step three. At step four, the ALJ found that, during Plaintiff's period of drug abstinence, and assuming she was not using drugs before May 2008, Plaintiff retained the RFC to perform simple and repetitive jobs with occasional social interaction with the public, coworkers, and supervisors in a low stress setting which do not involve fast-paced production goals. In making this determination, the ALJ expressly found Plaintiff's testimony regarding the severity of her symptoms to be not credible. Finally, at step five, the ALJ relied on the vocational expert's testimony to conclude that Plaintiff could perform other jobs available in significant numbers in the national economy.

In sum, the ALJ concluded that Plaintiff's limitations were disabling during the period in which she regularly used narcotics, but further found that drug use was a contributing factor material to the disability determination. He thus concluded that Plaintiff was not disabled at any time after her alleged onset date.

## V.    Conclusions of Law and Analysis.

Plaintiff contends that the ALJ's decision must be reversed because it misapplies the relevant legal standards and is not based on substantial evidence. In particular, she argues that (1) the ALJ's finding that ADHD is not a medically determinable impairment is not supported by substantial evidence; (2) the ALJ committed legal error by giving

controlling weight to the opinions of two nonexamining physicians, and by giving insufficient weight to the opinions of her treating physicians and her most recent counselor at HCRS; (3) the ALJ's finding that Plaintiff's testimony regarding the severity and persistence of her symptoms was not credible is not based upon substantial evidence; and (4) the ALJ's assessment of Plaintiff's RFC in the absence of substance abuse is not supported by substantial evidence.[2]

### A.     The ALJ Committed Reversible Error by Erroneously Evaluating Opinion Evidence.

In his decision, the ALJ adopted the opinions of Dr. Thomas Reilly, Ph.D., a State Agency consulting psychologist, and Dr. James Claiborne, Ph.D., the medical expert who testified at the supplemental hearing. Neither Dr. Reilly nor Dr. Claiborne ever examined or treated Plaintiff. The ALJ acknowledged that the opinions of Dr. Southworth, Plaintiff's treating psychiatrist, and Marlis Sorge, a Licensed Clinical Mental Health Counselor who treated Plaintiff at HCRS, conflicted with the nonexamining sources. Plaintiff argues that Dr. Southworth's opinion should have been afforded controlling weight because he is a treating physician and his opinion is not inconsistent with other substantial evidence in the record. She argues further that Ms. Sorge's opinion was improperly discounted under the applicable regulations for assessing opinion evidence.

Under the "treating physician rule," a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 567-69 (2d Cir. 1993). When a treating physician's opinion is not afforded controlling weight, the ALJ must provide "good reasons" for discounting it. 20 C.F.R. § 416.927(d)(2); *see also Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). This requirement is consistent with the general rule

---

[2] Plaintiff also argues that the ALJ failed to adopt the vocational expert's testimony from the first administrative hearing. However, assuming that the ALJ properly relied on the opinions of nonexamining sources, and that he properly discounted Plaintiff's testimony regarding her symptoms, his conclusions are consistent with those of the vocational expert.

that greater weight is accorded to the opinion of a medical source who has examined the plaintiff than to the opinion of a source who has not.  *See Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990) ("The general rule is that . . . reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.  The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant.").

In the Second Circuit, a "treating physician" is the "claimant's . . . own physician, osteopath or [psychiatrist] . . . who has or had an ongoing treatment and physician-patient relationship with the individual," based on the "nature of the physician's relationship with the patient, rather than its duration or its coincidence with a claim for benefits." *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988).  Doctors who see the claimant only once are not generally considered "treating physicians."  *See Garcia v. Barnhart*, 2003 WL 68040, at *5 n.4 (S.D.N.Y. Jan. 7, 2003).

Here, Dr. Southworth treated Plaintiff as her psychiatrist on at least three separate occasions between September 2007 and September 2008.  Although Dr. Southworth apparently did not treat Plaintiff on a regular basis, they maintained a psychiatrist-patient relationship both while Plaintiff was actively using drugs and during her period of sobriety. [3]  On September 2, 2008, which was approximately three months after the point at which the ALJ determined that Plaintiff stopped using drugs, and before her relapse in 2009, Dr. Southworth completed a "Psychiatric/Psychological Impairment Questionnaire."  (Administrative Record ("AR") 427-434.)  He listed diagnoses of borderline personality disorder, ADHD, opiate dependence in remission, and noted "some evidence" of bipolar disorder.  (AR 427.)  He further noted a "fair" prognosis if

---

[3] The Commissioner suggests that Plaintiff possibly saw Dr. Southworth on only two occasions, once in September 2007, and again in September 2008.  However, on June 25, 2008, Ms. Sorge's treatment notes indicate that Plaintiff had already seen Dr. Southworth twice by that time.  In addition, on July 31, 2008, Dr. Southworth signed a note indicating that Plaintiff had been unable to care for her children from the time of her Brattleboro Retreat discharge in May 2008 to "the present." (AR 369.)  In any case, the Commissioner neither argues nor provides authority to demonstrate that Dr. Southworth was not Plaintiff's "treating physician" within the meaning of 20 C.F.R. § 404.1527.

Plaintiff maintained drug abstinence, but also observed that she still experienced "rapid changes of mood with severe problems taking medicines reliably." (AR 427-28.) As to Plaintiff's impairment-related functionality, Dr. Southworth indicated marked limitations in her concentration and persistence, as well as her social interactions. In particular, Dr. Southworth believed that Plaintiff had marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance. He also opined that she was "markedly limited" in her ability to interact with the public, accept instructions, respond appropriately to supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (AR 431.) Finally, Dr. Southworth indicated that he expected Plaintiff's impairments to last at least twelve months, that she could not tolerate even a "low stress" work environment, and that her impairments would cause her to be absent from work more than three days per month. (AR 433-34.)

Dr. Southworth's conclusions conflict with those of Dr. Reilly and Dr. Claiborne. Dr. Reilly recorded his findings on a "Mental Residual Functional Capacity Assessment" form that covered the period of November 11, 2006 to November 7, 2007. (AR 325-28.) Although Plaintiff was still regularly using drugs throughout this period, Dr. Reilly indicated that his report was an "assessment of [her] residual capacities and functional limitations in the absence of [drug and alcohol abuse]." (AR 341.) Unlike Dr. Southworth, Dr. Reilly did not find that Plaintiff had marked limitations in sustained concentration and persistence, or in social interaction. (AR 325-26.) Likewise, medical expert Dr. Claiborne testified that, in the absence of drug use, Plaintiff had only moderate limitations with regard to social functioning and concentration, persistence, and pace. (AR 521.) Both Dr. Reilly and Dr. Claiborne found a significant relationship between Plaintiff's drug use and the severity of her impairments.

Although the ALJ acknowledged during the initial hearing that Plaintiff could not perform any jobs identified by the vocational expert if the ALJ adopted Dr. Southworth's assessment, he failed to explain why Dr. Southworth's opinion as to the severity of Plaintiff's impairments was not entitled to controlling weight. Instead, he merely noted

that "the opinions of Dr. Douglas Southworth, M.D. . . . are given some weight to the extent that they are consistent with the rest of the medical opinion and the claimant's testimony. As [a] psychiatrist, [he is] well qualified to diagnose mental illness." (AR 21.) The ALJ thus implicitly credited Dr. Southworth's opinions as supported by proper diagnostic techniques, and he made no finding that those opinions are inconsistent with other substantial evidence in the record. Because this approach is inconsistent with the treating physician rule, as well as the Second Circuit's requirement that any derivation therefrom must be explicitly supported by "good reasons," the ALJ's decision as adopted by the Commissioner must be reversed and remanded.

The Commissioner argues that the ALJ's decision can be salvaged by a thorough review of the record to confirm that rejecting Dr. Southworth's opinion was appropriate, and that Plaintiff received all of the treating physician rule's "procedural advantages." *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). However, failure to comply with the rule "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered." *Zabala*, 595 F.3d at 409; *see also Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

Moreover, a review of the entire record reveals that Dr. Southworth's conclusions are not inconsistent with other substantial evidence. In particular, treating notes from Ms. Sorge, who was Plaintiff's primary therapist between May 2008 and September 2008 (AR 442), support Dr. Southworth's assessment that Plaintiff's marked limitations persisted following her cessation of drug use.[4] To argue otherwise, the Commissioner

---

[4] *See* AR 420 (June 25, 2008, Plaintiff was overwhelmed by her depression, experienced racing thoughts, needed to control her impulses); AR 422 (July 18, 2008, Plaintiff felt very impulsive as though she could not control her behavior, even though she had not used any drugs); AR 428

9

relies on Dr. Lord's March 2009 note indicating that Plaintiff had "been doing well psychiatrically," (AR 459) but that evidence is not persuasive. Dr. Lord primarily treated Plaintiff for opiate addiction, not her psychiatric disorders. And, in any case, he made similar observations before May 2008, a period during which the Commissioner agrees that Plaintiff's affective and personality disorders resulted in disabling functional limitations. Thus, the only evidence that may be fairly weighed against Dr. Southworth's findings is the opinion evidence of two nontreating sources. These circumstances warrant remand. *See, e.g., Green-Younger v. Barnhart*, 335 F.3d 99, 107-108 (2d Cir. 2003) (recognizing expert opinion evidence as not sufficiently substantial to undermine the position of the treating physician where the expert was a consulting physician who did not examine the claimant).

The ALJ also improperly discounted the opinion of Ms. Sorge. On January 7, 2009, Ms. Sorge opined that Plaintiff "is totally disabled without consideration of any past or present drug and/or alcohol use. Drug and/or alcohol use is not a material cause of this individual's disability." (AR 437.) The ALJ gave this opinion "very limited weight" because (1) the determination of disability is reserved to the Commissioner, and (2) it "is flatly inconsistent with the rest of the medical evidence of record and the opinions of Drs. Reilly and Claiborne." (AR 21.)

Although the treating physician rule does not apply to Ms. Sorge's opinion because she is not a licensed or certified psychologist, and is therefore not an "acceptable medical source" under the regulations, *see* 20 C.F.R. §§ 404.1513(a), 416.913(a), 404.1502, 404.1527(d), she is an "other medical source" under 20 C.F.R. § 404.1513(d)(1) who may offer evidence on the severity of impairments that are established by other medical evidence. Opinions from such sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other evidence in the file." Social Security Ruling (SSR) 06-3p.

_____

(August 20, 2008, Plaintiff reported feeling a "little better," but her mood had been "up and down," she had only three hours of sleep in the last seventy-two hours, and she had been feeling "murderous rage").

20 C.F.R § 404.1527(d) sets forth the relevant factors that the Commissioner must consider in weighing medical opinions to which the treating physician rule does not apply. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("when a treating physician's opinion is not given 'controlling' weight, the regulations require the ALJ to consider [certain] factors in determining how much weight it should receive"). These same factors apply to opinions from "other" medical sources like Ms. Sorge, as well as nontreating medical sources like Drs. Reilly and Claiborne.[5] *See* SSR 06-3p. Thus, the opinions of Ms. Sorge, Dr. Reilly, and Dr. Claiborne require the same analysis according to the same factors: (1) the examining relationship between the individual and the medical source; (2) the treatment relationship, including its length, nature, and frequency of evaluation; (3) the degree to which the medical source provides evidentiary support for his or her opinion; (4) how consistent the opinion is with the entire record; (5) whether the opinion is from a specialist; and (6) any other relevant factors, including the extent to which the medical source is familiar with other record information. *See* 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (d)(3)-(d)(6).

Here, the ALJ rejected Ms. Sorge's opinion as improperly reaching the ultimate question of disability, thus failing to recognize its probative value on what is perhaps the most important issue in this case: the extent to which Plaintiff's symptoms improved in the absence of drug use. Additionally, the ALJ favored the opinions of Dr. Reilly and Dr. Claiborne without considering the relevant factors under the regulations. Thus, on remand the Commissioner must reassess the competing opinion evidence, and properly determine the weight to afford Ms. Sorge's opinion on the severity of Plaintiff's post-May 2008 symptoms.

### B. The ALJ's Finding that ADHD is Not a Medically Determinable Impairment is Not Supported by Substantial Evidence.

Plaintiff challenges the ALJ's finding that ADHD is not one of her medically

---

[5] In addition, assuming that "good reasons" exist to discount Dr. Southworth's opinion, his views would still need to be considered under the 20 C.F.R. § 404.1527(d) factors, and, under the factors, the general rule that the opinions of treating sources are accorded more weight than the opinions of nontreating sources would still apply.

determinable impairments, arguing that such conclusion is not supported by substantial evidence. The ALJ concluded at step two of the sequential evaluation that Plaintiff did not have ADHD because (1) Dr. Claiborne "ruled it out as a working diagnosis at the supplemental hearing," and (2) Dr. Lord questioned the diagnosis in April 2009 because he had not seen it documented. These conclusions are contrary to the record. First, Dr. Claiborne did not rule out ADHD as a working diagnosis; rather, he testified that ADHD, though not well documented, is "certainly potentially part of the picture." (AR 50.)

Second, Plaintiff was prescribed Adderall to treat ADHD throughout the relevant time period, and the record is replete with evidence supporting the diagnosis, both from Plaintiff herself as well as her treatment providers. For example, Plaintiff was first formally diagnosed with ADHD at Brattleboro Retreat in August 2007. A discharge summary signed by Geoffrey Kane, MD noted that, on August 15, 2007, "the preliminary report of ADHD testing was available. . . . [and] [t]here was sufficient evidence to support ADHD, combined type." (AR 281.) A review of Plaintiff's testimony and her subjective complaints to treatment providers further indicates that she had been diagnosed as "borderline" ADHD during childhood. (AR 47-48.) Plaintiff also testified that she "had an aide with [her] most of [her] grade school because [she] stayed back in first grade and [she] was separated from the whole class because [she] had concentration problems and [she] didn't sit down." (AR 498.) She "kept getting up and running around the room and so . . . had one person that sat at [her] desk with [her] all day." *Id.* She also consistently reported to both Ms. Sorge and Dr. Southworth that she was regarded as "borderline" ADHD as a child. (AR 414, 441.) In addition to the caregivers at Brattleboro Retreat who established the diagnosis, it was subsequently endorsed by Dr. Southworth, Dr. Conger, and the State Agency consultant Dr. Reilly. (AR 330, 341, 351, 427.)

The only evidence to the contrary is Dr. Lord's statement from April 2009 that Plaintiff "is taking Adderall for ADHD for which we have never seen documentation of diagnosis. This bears watching[.]" (AR 455.) In light of the entire evidentiary record, this stray observation, standing alone, does not reasonably support the conclusion that

12

Plaintiff does not have ADHD.  Accordingly, it cannot be considered substantial evidence.  *See Richardson*, 402 U.S. at 401.  On remand, the Commissioner must determine whether Plaintiff's ADHD is a "severe" impairment, and must consider any functional limitations caused by the ADHD at the remaining steps of the sequential evaluation.  *See* 20 C.F.R. § 404.1545 ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.").

## VI.   Order.

For the foregoing reasons, Plaintiff's motion to reverse (Doc. 13) is GRANTED, and the Commissioner's motion to affirm (Doc. 18) is DENIED.  Plaintiff's claim for SSDI and SSI must be remanded pursuant to "sentence four" of 42 U.S.C. § 405(g)[6] for a new hearing so that the opinions of Dr. Southworth and Ms. Sorge can be properly evaluated under the regulations and Second Circuit case law, and so that Plaintiff's ability to work can be assessed in light of her ADHD.  Because the court remands for a re-evaluation of the evidence, it expresses no opinion as to whether substantial evidence supports the ALJ's credibility determination, or whether there is substantial evidence to find that Plaintiff's substance abuse is a contributing factor material to a finding of disability.  The ALJ based these determinations largely on his resolution of the competing opinion evidence—a process which must begin anew on remand.  This matter is hereby remanded to the Social Security Administration for further proceedings consistent with this Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _10th_ day of May, 2011.

---

[6] Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner.  This may include a remand of the case back to the Commissioner for further analysis and a new decision.  *See generally Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).  A sentence four remand is a final judgment.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102 (1991); Fed. R. Civ. P. 58.

13

Christina Reiss, Chief Judge
United States District Court